UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES R. JONES, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:21 CV 370 |
| | ) |
| VALPARAISO COMMUNITY | ) |
| SCHOOL CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

This matter is before the court on defendants' motions for summary judgment. (DE ## 45, 48.) For the reasons that follow, the motions are granted.

**I.     BACKGROUND**[1]

Plaintiff James Jones, Jr. is an African American former employee of defendant Valparaiso Community School Corporation ("VCSC"), where he worked as a custodian at Northview Elementary School. (DE # 2.) Defendant Loren Hershberger is the principal at Northview. (DE # 47-4.)

Plaintiff was terminated from his employment at Northview on October 23, 2018. (DE # 49-7 at 36.) A few days later, he filed a federal complaint against Northview.[2] (DE # 49-14.) While he was attempting to serve the summons for that complaint on

---

[1] The following facts are undisputed for purposes of defendants' motions, unless otherwise noted.

[2] Acting pro se, plaintiff named "Northview Elementary School" as the defendant. *Jones v. Northview Elementary School*, 2:18-CV-405 (N.D. Ind. filed Oct. 29, 2018).

Northview school officials, school officials called the Valparaiso Police Department, and as a result, plaintiff received a criminal trespass warning. (DE # 49-3 at 9, DE # 49-15 at 4.) The warning stated that plaintiff was prohibited from entering Northview or any other VCSC property. (DE # 49-3 at 9.) The warning stated that it would remain in effect unless the property owner made a written request of revocation, in person, to the Valparaiso Police Department. (*Id.*) Plaintiff signed the warning. (*Id.*) The warning was kept on file at the Valparaiso Police Department. (*Id.* at 3.)

In April of 2019, plaintiff filed a charge of discrimination with the Gary Human Relations Commission, claiming that Northview officials discriminated and retaliated against him on the basis of his sex and race by discharging him without explanation, barring him from VCSC property, failing to compensate him for four hours of overtime, and telling him not to apply for any other jobs at Valparaiso schools. (DE # 49-10.)

In June of 2019, plaintiff and VCSC executed a settlement agreement in which plaintiff agreed to release VCSC of all claims related to the discrimination charge. (DE # 49-11.) In the settlement agreement, VCSC agreed to "withdraw any Order of Protection and grant Jones the same access to VCSC as any other member of the general public." (*Id.* at 4.)

On November 26, 2019, plaintiff traveled to Northview and parked in the school parking lot. (DE # 49-7 at 22.) School was in session at the time. (*Id.* at 26.) Plaintiff got out of his car, crossed the parking lot, and walked along the sidewalk directly in front of the school entrance. (*Id.* at 22-23.) While walking through the parking lot, he was

2

close enough to see a woman through a window. (*Id.* at 25.) He then walked along the sidewalk adjacent to the street. (*Id.* at 41.)

A school employee called the police to report that plaintiff was on the property. (DE # 50, 911 call.) The school's trespass policy states: "Trespass on school property will not be tolerated. All school officials are authorized to request any person to leave school premises if that person is interfering with the lawful use of school property. If the person does not leave the premises as requested, school officials may request assistance from law enforcement officers." (DE # 59-8 at 55.) In this instance, school officials called the police, instead of confronting plaintiff. (DE # 47-4 at 3.)

Defendant Michael DeHaven, Assistant Chief of the Valparaiso Police Department, was the first officer to respond. (DE # 49-3 at 1.) DeHaven, who had been performing administrative duties in plain clothes, found plaintiff on the sidewalk in front of the school. (*Id.*) DeHaven then turned the matter over to the responding uniformed police officers, defendants Ryan Sobierajski and Logan Redmon. (*Id.* at 2.) Defendant Jeffrey Balon, the then-police chief, was not present at any time during this interaction with plaintiff. (*Id.*)

The officers asked plaintiff for identification and he refused, saying that school officials already knew his identity. (DE # 50, Body Camera Video of Ryan Sobierajski.) Plaintiff told the officers that he was fired from the school over "racist misconduct type stuff" and he was exercising his right to walk around. (*Id.*) The officers explained to plaintiff that, based on concerns stemming from the parties' existing relationship, school

3

officials did not want plaintiff on the property and he should leave. (*Id.*) Plaintiff insisted that he had a right to be on school property because it was public property. (*Id.*) He insisted that school officials could not tell him not to come, and he could come back every day if he wanted because he won that right in court. (*Id.*) He stated that he was there to exercise and also that he was looking at the neighborhood because he might want to enroll his niece or nephew at the school, if they moved to the area. (*Id.*)

While Sobierajski and Redmon spoke with plaintiff, DeHaven went inside the school and reviewed the video footage of plaintiff in the school parking lot, walking past the front entrance, and walking around the property. (DE # 49-3 at 2.) School officials informed DeHaven of the employment and legal history between VCSC and plaintiff. (*Id.*) The school principal, defendant Hershberger, informed DeHaven that there was a no trespass warning against plaintiff, and that the school did not want plaintiff on the property due to safety concerns. (*Id.*) Sobierajski and Redmon confirmed with the Valparaiso Police Department dispatch that there was a no trespass warning against plaintiff on file with the police department, prohibiting plaintiff from being on Northview property. (*Id.* at 3.) The officers determined that plaintiff was trespassing and placed him under arrest for violating Indiana Code § 35-43-2-2. (*Id.* at 4.)

On April 17, 2020, plaintiff sent a letter, entitled Notice of Tort Claim, to various governmental entities and officials, including the mayor of Valparaiso. (DE # 49-8.) Plaintiff's notice stated that he was giving notice of "state tort claims by James R. Jones against Principal Hershberger and the Valparaiso Community School Corporation for

4

negligence, negligent infliction of emotional distress, malicious prosecution, and intentional infliction of emotional distress." (*Id.* at 1-2.) After describing the incident leading to his arrest, plaintiff stated: "Principal Hershberger or another employee at Northview Elementary School falsely told officers that Mr. Jones was not allowed on school property and that there was a no trespass warning. Law enforcement officers arrived and arrested Mr. Jones for trespassing." (*Id.* at 2.) He claimed that the actions of Hershberger and the VCSC were unlawful and he sought damages against them. (*Id.*)

Plaintiff subsequently filed the present lawsuit. (DE # 2.) In Count I of his complaint, plaintiff alleges that Hershberger, VCSC, DeHaven, Sobierajski, and Redmon violated his rights under the Equal Protection Clause by discriminating against him on the basis of his race. (*Id.*) In Count II, plaintiff alleges that Balon, DeHaven, Sobierajski, and Redmon, violated his right against unreasonable search and seizure. (*Id.*) In Count III, plaintiff alleges that Balon, in his official capacity, is liable for failure to train the arresting officers. (*Id.*) In Counts IV, V, VI, plaintiff alleges state law claims for negligence, assault and battery, and false imprisonment, against DeHaven, Sobierajski, and Redmon. (*Id.*) In Count VII, plaintiff alleges a state law claim of intentional infliction of emotional distress against Hershberger, VCSC, DeHaven, Sobierajski, and Redmon. In Count VIII, and Count IX, plaintiff alleges state law claims of negligence and breach of contract against Hershberger and VCSC. (*Id.*)

Now before this court are motions for summary judgment filed by all defendants. (DE ## 45, 48.) This matter is fully briefed and is ripe for ruling.

5

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

### III. DISCUSSION

#### A. *Claims Against Police Defendants*

##### 1. Unreasonable Seizure Claim

Defendants Balon, DeHaven, Redmon, and Sobierajski ("police defendants") argue that they are entitled to summary judgment on plaintiff's false arrest claim because the officers had probable cause to arrest plaintiff for violating Indiana Code § 35-43-2-2. (DE # 52 at 6-7.) "The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 714. "A reasonable officer can have probable cause even if []he turns out to be mistaken[.]" *Muhammad v. Pearson*, 900 F.3d 898, 909 (7th Cir. 2018).

Section 35-43-2-2 defines the offense of criminal trespass as follows:

(b) A person who:

> (1) not having a contractual interest in the property, knowingly or intentionally enters the real property of another person after having been denied entry by the other person or that person's agent; [or]
>
> (2) not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent[.]

7

Ind. Code § 35-43-2-2. For purposes of this subsection, a person may be "denied entry" by means of oral or written personal communication. Ind. Code § 35-43-2-2(c)(1).

The court finds that the arresting officers had probable cause to arrest plaintiff for violating § 35-43-2-2. Plaintiff did not have any contractual interest in Northview. Plaintiff told the officers that he was there to exercise, and also that he was looking around the school because his niece or nephew might move to the area and enroll. Plaintiff insisted that he had a right to walk around the school because it was public property, and stated repeatedly that if he wanted to come back, he would come back. The officers knew that plaintiff had a contentious history with school officials and confirmed with dispatch that there was a criminal trespass warning against plaintiff on file with the Valparaiso Police Department, prohibiting plaintiff from entering Northview property. School officials expressed security concerns over plaintiff's presence and stated that they did not want him on school property. Based on these facts, the officers had probable cause to arrest plaintiff for criminal trespass.

Plaintiff's response incorrectly applies an equal protection analysis to his argument regarding probable cause, and largely fails to respond to the police defendants' probable cause argument. However, he does claim that § 35-43-2-2 does not apply to the sidewalk, and therefore there was no probable cause to arrest him. (DE # 62 at 13.) This argument fails, for two reasons. First, it ignores the undisputed fact that plaintiff parked his car in the Northview parking lot and walked through the parking lot and in front of the school entrance. Plaintiff makes no claim that these areas would

8

not be subject to the criminal trespass warning on file with the police department.

Second, while there is insufficient evidence and argument in the record to determine whether the sidewalk outside Northview is actually part of Northview's property, it is ultimately irrelevant for purposes of the probable cause analysis to know whether plaintiff was on school property or on a public right-of-way when he was arrested. An officer in the defendants' position could have reasonably believed that the sidewalk was part of school property for purposes of that warning, and therefore probable cause existed.

The Seventh Circuit's opinion in *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) is instructive. In *Kelley*, the Seventh Circuit held that officers had probable cause to arrest the plaintiff for trespassing on a Wendy's property in violation of § 35-43-2-2. The officers were told by the manager that the plaintiff was on restaurant property and that he wanted her to leave. The officers saw the plaintiff in the restaurant parking lot and on the adjacent grassy area in front of the restaurant. The officers asked the plaintiff to leave the premises several times, but she refused. Based on these facts, the Seventh Circuit found that the officers had probable cause to arrest the plaintiff for criminal trespass. The Court found that there was probable cause despite the fact that the plaintiff told the officers that she was on a public right-of-way, and a criminal court later confirmed this fact and dismissed the charges against her. In rejecting the plaintiff's assertion that the officers should have investigated her claim of innocence prior to arresting her, the Seventh Circuit held:

9

> The officers did not have to first ascertain the location of the property line from official sources in order to determine whether she was in fact on private property. It was sufficient that the officers were informed by [the manager] that [the plaintiff] was on Wendy's property and that he wanted [the plaintiff] to leave. We have held that when an officer receives information from a third party whom the officer has reason to believe is telling the truth, the officer has probable cause.

*Id.* at 647. The fact that the officers were ultimately mistaken, did not deprive them of probable cause. *Id.; see also Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999), *as amended* (Jan. 7, 2000) ("Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established.").

Like the officers in *Kelley*, based on the information known to them at the time, the police defendants had probable cause to arrest plaintiff, regardless of whether the sidewalk where plaintiff was arrested was a public right-of-way. Thus, the police defendants are entitled to summary judgment on plaintiff's unreasonable seizure claim.

### 2.   Unreasonable Search Claim

In light of this court's determination that the officers had probable cause, the police defendants are likewise entitled to summary judgment on plaintiff's unreasonable search claim. "If an officer has probable cause to arrest, []he also may conduct a search incident to that lawful arrest without any additional justification." *United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017).[3]

---

[3] Plaintiff did not respond to this portion of the police defendants' motion, and therefore has waived any arguments he may have had in response. *See e.g. Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014).

10

### 3. Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.' " *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). "To avoid summary judgment on this claim, [the plaintiff] need[s] to come forward with evidence that would allow a reasonable jury to infer that the defendants intentionally treated him differently because of his race." *Lisle v. Welborn*, 933 F.3d 705, 719–20 (7th Cir. 2019) (applying *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) to equal protection claim). Absent direct evidence of racial animus, a plaintiff must show that he was treated differently from a similarly situated individual of a different race owing at least in part to a discriminatory motive. *Adams v. Reagle*, No. 21-1730, --- F.4th ---, 2024 WL 340045, at *9 (7th Cir. Jan. 30, 2024). The ultimate question is whether the evidence, as a whole, would permit a reasonable fact-finder to conclude that plaintiff's race caused the alleged discrimination. *Smith v. City of Janesville*, 40 F.4th 816, 821 (7th Cir. 2022).

Here, plaintiff produces no evidence, aside from the fact of his race, to support his equal protection claim against the police defendants. In fact, he admits in his response brief that his equal protection claim is based on a "process of elimination" because there is "no other explanation for his wrongful arrest." (DE # 62 at 11.)

Plaintiff attempts to establish his claim via comparator evidence, arguing that while he worked at the school he never saw a white person arrested. (DE # 62 at 13.)

11

However, this is not evidence of a *similarly situated* comparator who was treated differently, and therefore does not help him establish a question of fact on his equal protection claim.

As discussed above, the officers had probable cause to arrest plaintiff. In the face of this race-neutral justification for the defendants' actions, plaintiff does not point to any evidence that could suggest that his race was a motivating factor in his arrest. Without such evidence, plaintiff has failed to create a question of fact on this issue. Accordingly, the police defendants are entitled to summary judgment on plaintiff's equal protection claim. *See e.g. Lisle*, 933 F.3d at 720 ("Without more evidence of racial motive, the officers' judgments about whom to believe are not sufficient to allow a jury to infer racial bias. [Plaintiff's] claim of race discrimination is supported only by speculation and conjecture, which is not enough to survive summary judgment.").

### 4. Monell *Claim*

Defendant Balon, sued in his official capacity as police chief, moves for summary judgment on the claims against him. These claims operate as claims against the City of Valparaiso under *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978). Plaintiff's claims are based on a failure-to-train theory. (DE # 62 at 14.)

In light of this court's finding that the police defendants committed no constitutional violation, Balon is entitled to summary judgment on plaintiff's *Monell* claim. *See Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional

12

violation by a municipal employee."); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("[T]here can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights."). Accordingly, Balon is entitled to summary judgment in his favor.

### 5. State Law Claims

The police defendants argue that they are entitled to summary judgment on plaintiff's state law claims because plaintiff failed to comply with the notice requirement of the Indiana Tort Claims Act ("ITCA"), § 34-13-3-8. (DE # 52 at 20.) Tort claims brought under Indiana law are subject to the ITCA's procedural and substantive requirements. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 648 (7th Cir. 2006). "Compliance with the ITCA is a prerequisite to pursuing a tort claim . . . regardless of whether suit is filed in state or federal court." *Id.*

The ITCA bars claims against a political subdivision unless notice is filed with the governing body of that political subdivision. Ind. Code § 34-13-3-8. This requirement also applies to claims against government employees sued in their individual capacity if the act or omission that caused plaintiff's loss was committed within the scope of the employee's employment. *Chang v. Purdue Univ.*, 985 N.E.2d 35, 51 (Ind. Ct. App. 2013). Here, there is no argument that the police defendants were not acting within the scope of their employment in arresting plaintiff.

The notice "must describe in a short and plain statement the facts on which the claim is based." Ind. Code § 34-13-3-10. It must also include, among other things, the

circumstances which brought about the loss and the names of all persons involved if known. *Id.* Here, the parties dispute whether plaintiff's ITCA notice to the Valparaiso mayor substantially complied with this notice requirement, such that he may proceed with his state law claims against the police defendants.

" 'Substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirement is satisfied.' " *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013) (quoting *Ind. State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind.1988)). "The purposes of the notice statute include informing the officials of the political subdivision with reasonable certainty of the accident and surrounding circumstances so that the political subdivision may investigate, determine its possible liability, and prepare a defense to the claim." *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013) (cleaned up). "The crucial consideration is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense." *Id.* at 707 (cleaned up). However, "mere actual knowledge of an occurrence, even when coupled with routine investigation, does not constitute substantial compliance." *Id.* (cleaned up).

The court finds that plaintiff did not substantially comply with the ITCA's notice requirement with respect to his claims against the police defendants. The notice makes plain that plaintiff's complaints pertain only to Hershberger and the VCSC. Plaintiff described the alleged wrong-doing of Hershberger and VCSC, but did not allege any

14

wrong-doing on the part of the arresting officers. While he stated that he suffered emotional distress "from being unlawfully arrested as a result of the false accusations that he was not permitted to be on the property" (DE # 49-8 at 3), it is plain that his grievance pertained to the actions of Hershberger and VCSC. There is no indication that plaintiff intended to take legal action against the City or the arresting officers. *See Bienz v. Bloom*, 674 N.E.2d 998, 1005 (Ind. Ct. App. 1996) ("In order to constitute substantial compliance, the notice must not only inform the political subdivision of the facts and circumstances of the alleged injury but must also advise of the injured party's intent to assert a tort claim."). Plaintiff's letter would not have given Valparaiso officials enough information to ascertain the full nature of the claims against it so that it could determine its liability and prepare a defense. Accordingly, the police defendants are entitled to judgment in their favor on plaintiff's state law claims.

    B.    *Claims Against School Defendants*

        1.    <u>Equal Protection</u>

In his equal protection claim, plaintiff alleges that the school defendants (Hershberger and VCSC) only called the police and claimed he was trespassing because he is African American. As discussed above, in considering the school defendants' motion for summary judgment on this claim, the court must determine whether the plaintiff has "come forward with evidence that would allow a reasonable jury to infer that the defendants intentionally treated him differently because of his race." *Lisle*, 933

F.3d at 719–20.[4]

Plaintiff attempts to establish a question of fact on his equal protection claim using comparator evidence. This is certainly one way to pursue an equal protection claim. *See Adams*, No. 21-1730, --- F.4th ---, 2024 WL 340045, at *9 (absent direct evidence of racial animus, a plaintiff must show he was treated differently from a similarly situated comparator owing at least in part to a racially discriminatory motive). However, plaintiff does not actually present any comparator evidence – he merely points to his testimony that he never saw a white person arrested on Northview property. (DE # 58 at 9.) As discussed above, this is not evidence of a similarly situated person of a different race being treated differently than plaintiff.

The school defendants point to evidence that they called the police for a racially neutral reason: a disgruntled former-employee roaming school property during school hours presented a security threat. (DE # 52.) In response, plaintiff argues that VCSC policy is to ask a trespasser to leave, and if they do not comply, *then* call the police. He argues that the school defendants' deviation from this policy – calling the police before

---

[4] Plaintiff and the school defendants both erroneously frame plaintiff's equal protection claim as a "class of one" claim. However, plaintiff has not made a class of one claim. His claim is that he was treated differently based on his race. (DE # 2 at 6-8.) " '[C]lass of one' refers . . . to the fact that the plaintiff or plaintiffs is not suing as a member of an identifiable group, such as a race or a gender[.]" *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 895 (7th Cir. 2012); *see also Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) (explaining that a 'class of one' claim arises where the plaintiff has not alleged class-based discrimination). To the extent that plaintiff attempts to offer an alternative theory of liability under a class of one theory, this attempt fails as it requires evidence that the plaintiff was treated differently than a similarly situated person. *See FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 588 (7th Cir. 2021).

16

approaching him – is evidence of race discrimination.

Plaintiff is correct that, in some situations, deviation from an internal policy can serve as circumstantial evidence of discriminatory motive. "An employer's departure from its own policies may be circumstantial evidence of discrimination. However, there must be evidence of a specific policy that is regularly enforced and followed in similar situations." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 882 (7th Cir. 2016) (internal citation omitted).[5] Here, plaintiff has not pointed to any evidence that the school's trespass policy was enforced in any similar situation, and therefore there is no reason to believe that race was the reason for the deviation from policy, rather than plaintiff's history with the school. *Compare Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 723 (7th Cir. 2005) (employer's failure to follow internal procedure, in addition to other evidence of discriminatory intent, created question of fact for jury) *with Hanners v. Trent*, 674 F.3d 683, 695 (7th Cir. 2012) (deviation from company procedure was not suspicious where company had reason for deviating from procedure; without any other circumstantial evidence of race discrimination, "the minor deviation from written policy is insufficient to avoid summary judgment."). Accordingly, the school defendants are entitled to summary judgment on plaintiff's equal protection claim.

---

[5] *Bagwe* is a Title VII, not equal protection, case. However, "[t]he same requirements for proving discrimination apply to claims under Title VII, § 1981, and § 1983." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010).

### 2. *Monell* Claim

The school defendants have moved for summary judgment on plaintiff's *Monell* claim against VCSC. Plaintiff's claim is based on a failure-to-train theory. (DE # 58 at 11.) In light of this court's finding that the school defendants did not violate plaintiff's equal protection rights, the school defendants are entitled to summary judgment on plaintiff's *Monell* claim. *See Sallenger*, 630 F.3d at 504; *Jenkins*, 487 F.3d at 492.

### 3. State law Claims

The school defendants are also entitled to summary judgment on plaintiff's state law claims. With regard to plaintiff's intentional infliction of emotional distress claim, given the lack of evidence that the school defendants' decision to call the police was motivated by race, the school defendants' conduct cannot be considered "extreme and outrageous." *See e.g. Wilson-Trattner v. Campbell*, 863 F.3d 589, 596 (7th Cir. 2017) (identifying legal standard for claim).

Plaintiff's final claims against the school defendants are for breach of contract and negligence. He argues that defendants breached a contractual duty they owed to him when they called the police because the settlement agreement with VCSC entitled to him to the same access to the school as members of the general public. (DE # 58 at 12.) He argues that he was lawfully walking on the sidewalk, not trying to gain access to the school. (*Id.*) Finally, he argues that school officials failed to comply with the

18

school's visitor and trespass policies by calling the police.[6] (*Id.* at 12-13.)

Plaintiff's argument regarding the manner in which he was denied access to the school is irrelevant to the question presented in his state law claims, which is whether he was denied access that members of the general public would have been granted. The question is whether members of the general public, who were not visitors of the school, would be permitted to park in the school parking lot and walk around school property and the sidewalk in front of the school. The trespass policy states that trespass on school property will not be tolerated, and trespassers will be asked to leave (by school personnel or law enforcement). Hershberger stated that members of the general public do not have unfettered access to school property while school is in session. (DE # 47-4 at 2.) Hershberger has, on six other occasions, asked members of the general public who were on school property, and who did not have business with the school, to leave the property. (*Id.*) Plaintiff has not identified any evidence from which a reasonable inference could be drawn that he was denied access to the school in violation of his contractual agreement with VCSC. Accordingly, the school defendants are entitled to summary judgment on plaintiff's negligence and contract claims.

---

[6] Northbrook's visitor policy states, "[a]ll school visitors/volunteers will be required to show a valid government-issued photo identification (driver's license/State I.D.) upon entering the building at every visit during the school day. **All visitors/volunteers must report to the office first after entering the building.**" (DE # 59-8 at 56 (emphasis in original).)

## IV. CONCLUSION

Defendants' motions for summary judgment (DE ## 45, 48) are **GRANTED.** The court directs the Clerk to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendants Logan Redmon, Ryan Sobierajski, Michael DeHaven, Jeffrey Balon, Loren Hershberger, and Valparaiso Community School Corporation, and against plaintiff James R. Jones, Jr., who shall take nothing by way of the complaint.

**SO ORDERED.**

Date: March 4, 2024

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT